# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BEN BUTLER** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 07-386** |
| | * | |
| **EXXON MOBIL CORPORATION** | * | **SECTION "L"(2)** |

## ORDER & REASONS

The Court has pending before it Defendant Exxon Mobil Corporation's Motion for Summary Judgment (Rec. Doc. 118). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

## I. Background

This employment case arises from Plaintiff Ben Butler's employment with Defendant Exxon Mobil Corporation. The broad parameters of the employment relationship are not seriously disputed. Plaintiff began working for Defendant as a machinist in 1976 at a facility in Baton Rouge. Due to Plaintiff's allergic reactions to certain chemicals, Defendant reassigned him as a materials coordinator in 1988-89 which reduced his exposure. As a materials coordinator, Plaintiff took requests and ordered parts and supplies used in the day-to-day operation of the facilities. In 2004, Defendant undertook a facility-wide maintenance functions consolidation. The parties do not dispute that the 2004 consolidation was a plant-wide program intended to maximize synergy across different divisions and to eliminate redundant costs and work. Through that reorganization, Plaintiff was reassigned to a Special Purpose Machinery Group (SPM Group), which physically operated out of the Refinery portion of the Baton Rouge

facility. Although the number of materials coordinators was reduced, Plaintiff remained a materials coordinator.

Plaintiff alleges that throughout this period of employment, he was discriminated against on the basis of his race, disabilities, and eventually his age. During that period he filed a number of discrimination charges against Defendant. In a thorough prior Order and Reasons, Judge Tyson reviewed the allegations of prior discrimination and held that Plaintiff's claims arising out of that past conduct are time-barred. The Order and Reasons provided that:

> IT IS ORDERED that defendant's Motion for Partial Summary Judgment (Doc. No.79) is GRANTED and the following claims are dismissed with prejudice:
>    1.   All Title VII, ADA and ADEA claims (including without limitation, discrimination, harassment, and/or retaliation claims) based on any alleged unlawful conduct prior to **December 15, 2004**.
>    2.   All race claims under Section 1981 for denied promotion based on alleged denied promotions prior to **May 2, 2006**.
>    3.   All other race claims under Section 1981 based on alleged discrimination, harassment, and/or retaliation prior to **May 2, 2003**; and
>    4.   All claims brought under the Louisiana Employment Discrimination Law, La. R.S. 23:301, *et seq.* (race, age, and/or disability), based on alleged unlawful conduct prior to **May 2, 2006**.

(Rec. Doc. 93 at 27).

The actionable allegations of race, age, and disability discrimination in the present Complaint relate to the time period of 2003 to 2006. During that period, Plaintiff alleges a small array of discriminatory conduct, harassment, or retaliatory job consequences. Plaintiff alleges that a non-supervisor yelled at him and, after Plaintiff reported that to human resources, the individual said he would "get" Plaintiff and called him a "black bastard." Plaintiff alleges that his supervisor told him that Plaintiff was "faking" his health symptoms and complaints and on

one occasion told Plaintiff to "get your black ass out of my office." (However, Plaintiff admits that after reporting a discrimination complaint to Human Resources on June 30, 2005, he did not mention the "get your black ass out of my office" comment during the investigation that followed.) Plaintiff also alleges that he was subject to unwarranted complaints about the quality of his work and unnecessary job scrutiny and criticism, all of which had a discriminatory motive.

Plaintiff also characterizes the circumstances surrounding his retirement as the result of age, race, and disability discrimination. Plaintiff presents evidence that on June 30, 2005, he reported discrimination to Defendant's Human Resources Department. On July 7, 2005, Plaintiff presented a letter from his treating physician that his medical condition was being worsened by exposure to chemicals in the workplace and by job-related stress. On July 18, Plaintiff again complained of discrimination or harassment based on his medical disabilities. On July 19, 2005, Plaintiff transmitted to Defendant a letter from his treating physician that Plaintiff was medically unable to work due to his allergies and stress. Shortly after receipt of that letter, Defendant's Medicine and Occupational Health Department (MOHD) placed Plaintiff on short-term medical disability leave.

Plaintiff's treating physician submitted additional correspondence in late November, 2005, informing Defendant that Plaintiff could return to work with restrictions of no chemical exposure and "no exposure to personality stress in the immediate work environment." Plaintiff reported to work on November 28, 2005, but did not resume work and in fact did not work another day for Defendant. The parties dispute the subsequent sequence of events. According to Defendant, the MOHD did not immediately clear Plaintiff for return to work, but sought

3

clarification from the physician regarding how the stress restriction could be applied.  The treating physician responded that Plaintiff was medically unable to return to his specific SPM group, but could work in some other position.  Defendant contends that it conducted a job search to determine if there was another position available for Plaintiff in light of his qualifications and his physician's medical restrictions, but found no available position.  Therefore, Defendant helped Plaintiff apply for and receive a medical retirement with enhanced benefits upon expiration of his disability leave benefits in July, 2006.  According to Plaintiff, Defendant's conduct between November, 2005 and July, 2006 constituted a discriminatory failure to accommodate his disabilities that left him no choice but to accept a medical retirement.  The undisputed evidence demonstrates that the terms of that medical retirement were more favorable than a regular retirement under Defendant's pension plan.  Upon Plaintiff's retirement, his position was filled by a 54-year-old African-American man.

## II.    Law & Analysis

Plaintiff alleges causes of action under the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.*; Title VII, 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. § 1981; the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*; and state-law analogues to those statutes.  Defendant moves for summary judgment on all of Plaintiff's claims, arguing that the claims either fail as a matter of law or because there are no genuine disputes of material fact.  The Court will set forth the applicable summary judgment standard, resolve Defendant's argument regarding Plaintiff's exhaustion of administrative remedies, and then address Plaintiff's claims for disability discrimination and harassment, age discrimination, race discrimination and harassment, and finally his retaliation claims.

## A. Standard on Motions for Summary Judgment

A district court can grant a motion for summary judgment only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A movant can show that a fact "cannot be ... genuinely disputed" by "showing that the materials cited do not establish the ... presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing former Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (internal citations omitted).

5

**B.      Failure to Exhaust Administrative Remedies**

Before bringing a Title VII, ADA, or ADEA claim, a plaintiff must exhaust administrative remedies.  42 U.S.C. § 12117; 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d). Thus, a plaintiff cannot file suit without first having presented an administrative claim to the EEOC.  *E.g.*, *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).  A claim may then be brought in a lawsuit if it is contained in the EEOC complaint, construed broadly, or would be part of "the administrative EEOC investigation that can reasonably be expected to grow out of the charge of discrimination," which is "a fact-intensive analysis" of the substance of the complaint.  *See id.* (quotations omitted).

The summary judgment record reflects that Plaintiff filed an administrative charge with the Louisiana Commission on Human Rights on November 8, 2005, after he went on short-term disability leave but before his retirement/constructive discharge, and received a right-to-sue letter dated November 15, 2007, after suit had been filed.  Defendant argues that because the retirement/constructive discharge occurred after the complaint was filed, that alleged incident has not been through an administrative procedure and cannot be a proper claim in this lawsuit. Plaintiff responds that the administrative complaint should be read expansively to include the retirement/constructive discharge that occurred post-filing, but before the right-to-sue letter was issued.  On these facts, Defendant has not carried its burden to show as a matter of law that Plaintiff's retirement/constructive discharge would not reasonably have been investigated in connection with the original charge.  The motion is denied in this respect.

**C.      ADA Discrimination and Harassment**

As a threshold matter, there is a dispute as to which of Plaintiff's medical conditions are

6

involved in his disability discrimination claim. Defendant argues that the only purported

disabilities at issue are Plaintiff's allergies and stress, based on Plaintiff's admission at his

deposition:

> Q.    Is it your contention that ExxonMobil discriminated against you because
>        of your allergies and your Sjogren's syndrome? Are those the conditions
>        that you are alleging ExxonMobil discriminated against you –
> A.    ExxonMobil didn't know about my Sjogren's syndrome. The only person
>        who knew was my immediate supervisor at the time and that was Carlton
>        Bishop, and I asked that that not be divulged unless it became an issue
>        because I wanted to keep it private.
> Q.    And you are not contending that Mr. Carlton discriminated against you or
>        failed to accommodate your Sjogren's syndrome, then?
> A.    No. I'm not. No. I'm not. But I am contending that Exxon failed to
>        accommodate the disabilities that they knew about.
> ....
> Q.    Okay. So the medical conditions that make up part of your discrimination
>        and accommodation claims in this case are the allergies and the stress?
> A.    Yes.
> ....
> Q.    Any other medical conditions?
> A.    Well, no, that pretty much covers the medical conditions.

(P's Dep. Vol. I at 202:20-203:12, 204:3-7, 204:20-22). However, in his opposition brief,

Plaintiff raises "the 'constellation' of impairments, including chronic gastritis, GERD, and

Sjogren's Syndrome" as examples of disabilities or perceived disabilities which were the basis

for the alleged discrimination. (Rec. Doc. 129).

Plaintiff at his deposition expressly disclaimed any of those other impairments as the

subject of his disability claims. Moreover, Plaintiff has not articulated what accommodations he

requested specifically for those impairments, and what accommodations should have been

granted for those impairments, as compared to his allergies and stress. Accordingly, if there are

genuine issues of fact precluding summary judgment, those issues pertain only to the

impairments of allergies and stress.

Case 3:07-cv-00386-EEF-JW   Document 155   01/20/12   Page 7 of 29

To prevail on an ADA discrimination claim, Plaintiff must establish a prima facie case that (1) he is disabled within the meaning of the ADA, (2) he is qualified and able to perform the essential functions of his job, and (3) his employer discriminated against him because of his disability. *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999). Defendant argues that Plaintiff cannot show a genuine dispute as to any of those three prongs. The first prong, whether or not Plaintiff was disabled within the meaning of the ADA, is dispositive of the claim.

At all times in question, the ADA defined "disability" as follows:

(2) Disability
The term "disability" means, with respect to an individual–
    (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
    (B) a record of such an impairment; or
    (C) being regarded as having such an impairment.

42 U.S.C. § 12102 (2007).[1] The statutory definition of "disabled" "'needs to be interpreted strictly to create a demanding standard for qualifying as disabled.'" *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (U.S. 2002)). The Court must "conduct a rigorous and carefully individualized inquiry into [Plaintiff's] claimed disability to fulfill [the] statutory obligation to determine the existence of disabilities on a case-by-case basis." *Id.* (quotation omitted). Plaintiff apparently pursues all three theories: that he had an actual impairment that substantially limited a major life activity, that he had a record of such an impairment, or that Defendant regarded him as having such an

---

[1] Congress amended the ADA after all of the relevant conduct in this case; the Fifth Circuit has held that those amendments are not retroactive, and accordingly the Court will apply the law in effect at the time of the alleged conduct without noting each instance in which it has been superseded by statute. *See Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 857 (5th Cir. 2010).

8

impairment.  *See* Pl's Opp. at 7.  The Court will address each theory in turn.

### 1) Actual disability

Plaintiff argues first that he had "a physical or mental impairment that substantially limits one or more major life activities."  Disability under that prong requires three showings: that Plaintiff had an "impairment," that a "major life activity" was limited by the impairment, and that the impairment "*substantially* limited" that major life activity.  *See Waldrip*, 325 F.3d at 654.  An impairment was defined at the time as:

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
> (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).[2]  The impairment must also affect a "major life activity."  "Major life activities" are "those activities that are of central importance to daily life, and activities that are central to the life process itself."  *Waldrip*, 35 F.3d at 655 (quotations omitted).  At the time in question, regulations defined a "major life activity" as including "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).  Finally, the impairment must *substantially limit* that major life activity.  This requirement:

> is the linchpin of § 12102(2)(A).  Without it, the ADA would cover any minor impairment that might tangentially affect major life activities such as breathing, eating, and walking.  For this reason, an impairment must not just limit or affect, but must *substantially* limit a major life activity.

---

[2]The regulations are not controlling or entitled to *Chevron* deference, but the Fifth Circuit considers them to be persuasive authority.  *See Waldrip*, 325 F.3d at 655 n.1.

9

*Waldrip*, 324 F.3d at 655 (emphasis in original).  This is "a demanding standard for qualifying as disabled."  *Toyota*, 534 U.S. at 197.  "Permanency, not frequency, is the touchstone of a substantially limiting impairment."  *Waldrip*, 324 F.3d at 655 (quotation omitted).

Plaintiff provides competent summary judgment evidence in the form of medical records and his own testimony that he suffered from symptoms including dry skin and mouth, itchy skin, throat soreness, watery eyes, joint pain and stiffness, fatigue, depression, congestion, and sinus infections.  A jury could find that these are impairments.  Accordingly, the issue is whether those impairments *substantially* limited a major life activity.

 Plaintiff argues conclusorily that his allergy and stress symptoms limited the major life activities of hearing, breathing, eating,[3] speaking, and working.  On this point, Plaintiff has failed to raise a genuine factual dispute that his symptoms rose to the level of *substantially* limiting any major life activity.  Certainly, Plaintiff has articulated temporary inconvenience that arose from his allergies and stress.  But Plaintiff's own treating physician testified that the allergy symptoms were "seasonal," "what a lot of people in south Louisiana have," and "temporary," "occasional," and "sporadic."  (Mayfield Dep., 114:8-14, 198:20-199:8).  Likewise, Plaintiff admits that despite his impairments he can smoke cigars, visit smoke-filled casinos, drive, listen to music, go to concerts, care for himself daily, travel on vacations, and attend sporting events.  (D's Statement, Rec. Doc. 118-4 at ¶ 12; P's Statement, ¶ 12).  Temporary, occasional, and sporadic allergy symptoms are the opposite of the permanent issues that are the "touchstone of a substantially limiting impairment."  *Waldrip*, 324 F.3d at 655 (quotation omitted).  Plaintiff has

---

[3]The limitations on his ability to eat apparently pertain to the chronic gastritis and other conditions the Court has already held to be outside the scope of this lawsuit.

10

not raised a genuine issue of fact that his allergies were a disability as defined by the version of the ADA in effect at all relevant times.

Plaintiff also argues that his stress constituted a disability under the ADA because it substantially limited him in the life activity of work. The undisputed record establishes that Plaintiff's "stress" symptoms derived from "personality conflict," "difficulties with some individuals," "some issues in that immediate area of the workplace," and "interpersonal differences" and pertained specifically to his workgroup. (D's Statement, ¶ 55; P's Statement, ¶ 55). But a person is only substantially limited in the major life activity of working if he is significantly restricted from performing "a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *See Aldrup v. Caldera*, 274 F.3d 282, 286-87 (5th Cir. 2001) (quotation omitted). Stress brought on by inability or unwillingness to work with specific individuals "would merely tend to show that [plaintiff] was unable to perform any job at one specific location, and is not evidence of [his] general inability to perform a broad class of jobs." *See id.* at 287 (affirming grant of summary judgment). Accordingly, Plaintiff has not raised a genuine issue of material fact that his stress substantially limited his ability to work such that it rose to the level of a disability for the purposes of the ADA.

### 2) History of disability

Plaintiff also argues that under § 12102(1)(B) that he was disabled because he had a record of an impairment substantially limiting one or more major life activities. His evidence of a history of disability is essentially the same as his evidence of existing disability; that is, he does not articulate how his symptoms were previously worse or different, or how his *prior*

11

condition was the basis for discrimination. Because the purported history of disability is the same as the insubstantial impairment previously discussed, Plaintiff's argument under this prong of the statutory definition fails for the same reason that the impairment did not substantially limit a major life activity.

### 3) Regarded as disabled

Finally, Plaintiff argues in the alternative that if he was not actually disabled, Defendant at least regarded him as disabled. 29 U.S.C. § 12102(1)(C). "There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. U. Air Lines, Inc.*, 527 U.S. 471, 489 (1999). "In both cases, it is necessary that a covered entity entertain *misperceptions* about the individual–it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* (emphasis added). The plaintiff must also show that "the impairment, if it existed as perceived, would be substantially limiting." *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 281 (5th Cir. 2000).

Summary judgment is warranted on this theory of disability as well because Plaintiff has not produced any evidence that Defendant misperceived his impairments. The record reflects that Plaintiff's treating physician was in frequent correspondence with Defendant and informed Defendant about the actual nature, scope, and extent of Plaintiff's actual symptoms of impairment, which as previously discussed, were not substantially limiting. There is no

Case 3:07-cv-00386-EEF-JW   Document 155   01/20/12   Page 12 of 29

additional evidence of a mistaken belief by Defendant that those non-limiting impairments in fact substantially limited Plaintiff in any major life activity. On this record, the trier of fact could not reasonably find a disconnect between the actual nature of Plaintiff's impairments and Defendant's perception of them.

Plaintiff argues that the fact that in or about January, 2006, while Plaintiff was still on disability leave, Defendant's MOHD concluded that Plaintiff was impaired and "should not return to work with his current immediate work group." (Exh. M at 2-5). According to Plaintiff, that work limitation means that Defendant regarded Plaintiff as actually disabled *vis a vis* his ability to work with his current work group. As noted above, the inability to work with specific employees does not rise to the level of a substantial impairment of the ability to work and is not a disability under the ADA. If Defendant regarded him as unable to work with his work group, that does not equate regarding him as disabled within the meaning and protection of the ADA. Accordingly, Plaintiff has not raised a factual issue of "regarded-as" disability.[4]

Because Plaintiff was not disabled as defined by the operative law, summary judgment on his claim for discrimination under the ADA is granted.[5] Additionally, a claim for disability

---

[4]This case is different from *Stradley v. Lafourche Comm'ns, Inc.*, in which summary judgment was denied based on genuine issues of fact regarding whether the defendant employer received a diagnosis and added an additional level of "interpret[ation]" which led him to believe "that Stradley's condition made him potentially violent and hostile in the workplace," which "[a] reasonable jury could interpret ... as a conclusion that Stradley was not fit to work in any job." 869 F. Supp. 442, 443 (E.D. La. 1994). Thus, that case involved a question of fact as to the employer's misperception of the magnitude and effects of the plaintiff's condition. That element of misperception is lacking here.

[5]Summary judgment is also warranted to the extent that Plaintiff argues his retirement was in fact a discriminatory constructive discharge on the basis of his disability because Plaintiff's application for and receipt of Social Security Disability Benefits as of July 21, 2005 is inconsistent with a reasonable trier of fact concluding that Plaintiff was qualified to return to his

Case 3:07-cv-00386-EEF-JW   Document 155   01/20/12   Page 13 of 29

harassment or hostile work environment also depends on being actually disabled. *See Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 & n.6 (5th Cir. 2001) (disability harassment claim requires, *inter alia*, proof that plaintiff belonged to protected group and "that the harassment claimed of was based on her disability or disabilities" within the meaning of the ADA). Because Plaintiff was not disabled under the ADA, the harassment claim fails as well.[6] Finally, to the extent that Plaintiff argues his medical retirement was in fact a constructive discharge, that claim falls with his harassment claim. *See, e.g.*, *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 480 (5th Cir. 2008) (holding that constructive discharge claim requires "something more" than what is required to establish a harassment or hostile work environment claim).

## D.    Age Discrimination and Harassment Under the ADEA

Plaintiff also claims that he was discriminated against on the basis of his age. When Plaintiff went on short-term disability leave in 2005, he was 55, the earliest age at which an employee of Defendant could retire. The Fifth Circuit holds that "the familiar framework outlined in *McDonnell Douglas Corp. v. Green* for allocating the burden of production and the order of presenting proof" applies to ADEA claims. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377-78 (5th Cir. 2010). "To establish a prima facie case of age discrimination, a plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone

_____

job after that date. (Hagen Dep., Exh. B). This point will be discussed at greater length below.

[6]Thus, the Court need not address Plaintiff's allegation that his supervisor once told him he was "faking" his health complaints.

14

outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Id.* at 378 (quotation omitted). As noted above, after Plaintiff retired his position was filled by a 54-year-old African-American man. Therefore, Plaintiff proceeds on the theory that his retirement was a constructive discharge because of his age. If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce evidence of a legitimate, nondiscriminatory reason; if Defendant does so, Plaintiff must prove by a preponderance that the articulated nondiscriminatory reasons were a pretext for discrimination. *See id.* at 378 n.12.

Plaintiff has failed to produce sufficient facts that raise a prima facie case of age discrimination because he has no evidence that the alleged constructive discharge occurred because of his age. He simply points out that the alleged constructive discharge occurred after he turned 55, when retirement became an available option. Plaintiff offers only his conclusory testimony that he "saw a pattern that had developed where myself and other black employees similarly situated had began to be harassed and moved out of jobs and put in undesirable jobs and harassed to the point where, you know, they decided to go ahead and retire rather than either take that undesirable job or face the possibility of being disciplined and fired." (Butler Dep. Vol. II at 133:4-13). Nor does he articulate any specific age-based comments that might support the conclusion that his discharge, if involuntarily, was motivated in any way by his age:

> Q. Did anyone ever say anything that you thought was an age-based comment, something derogatory about age?
> A. I don't know what you would consider derogatory about age.
> Q. Do you remember anyone making my [sic] comments that you thought were derogatory about age?
> A. I don't know if you consider people saying things like –
> Q. You don't know of any?
> A. Unless you consider some things, you know, people might have said about you getting close to that age now or you are thinking about retiring.

(*Id.* at 140:22-141:11).  Indeed, he states that retirement would come up in "casual conversation"
because it was "something that, you know, at our ages we began to consider."  (*Id.* at 139:7-25).
Plaintiff also voluntarily attended retirement planning classes.  (*Id.* at 140:2-8).  In short,
Plaintiff offers nothing more than his bare, conclusory speculation, which cannot support a
conclusion by the trier of fact that Plaintiff's age was a factor in any of Defendant's alleged
actions.  Plaintiff's claim for age discrimination under the ADEA is dismissed.

Likewise, to the extent that Plaintiff pursues a claim for age-based harassment or hostile
work environment, summary judgment is also granted as to that claim.  The Fifth Circuit permits
a ADEA-based claim for a hostile work environment, but requires a showing, *inter alia*, of
harassment based on age creating an environment that "is permeated with discriminatory
intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the
victim's employment."  *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 436, 441 (5th Cir. 2011).
"[T]he complained-of conduct must be both objectively and subjectively offensive."  *Id.*
Plaintiff's evidence of "casual conversation" about retirement falls far short of establishing a
genuine factual dispute under this standard.  Summary judgment is granted as to Plaintiff's
claims for age discrimination and harassment.

**E.**     **Race Discrimination and Harassment Under Title VII and Section 1981**

As Defendant correctly points out, the prior Order and Reasons limits the relevant time
periods for Plaintiff's race-based claims under Title VII and 28 U.S.C. § 1981.  Title VII claims
based on conduct prior to December 15, 2004 are prescribed, and § 1981 claims based on

16

conduct prior to May 2, 2003 are prescribed.  (Rec. Doc. 93 at 27).[7]  Plaintiff cites examples of alleged racial comments that predate the operative period of actionable claims.  Under some circumstances, time-barred incidents may nonetheless be relevant "to illuminate current practices which, viewed in isolation, may not indicate discriminatory motives."  *See Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199-200 (5th Cir. 1992) (quotation omitted).  "This does not mean, of course, that the existence of prior conduct or misconduct will necessarily create a fact issue on the actionable events before the court."  *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).  The Court will focus on the actionable facts in the pertinent time frame, and consider prior conduct only to the extent, if at all, that it "illuminates" the actionable events.

1)       **Title VII Discrimination**

To show race discrimination in violation of Title VII, Plaintiff must establish a prima facie case by showing "(1) he is a member of a protected class; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than any

---

[7]Accordingly, the following incidents are not actionable:
- Mr. Butler's testimony that he heard the word "nigger" or was told that someone heard the word "nigger", both times occurring while he was a machinist and thus before 1990 (Butler Dep. Vol. II at 51:11-52:13, 71:6-72:2).
- Testimony by Carleton Bishop as to racial comments made between 1976 and 1986 (Rec. Doc. 123-4 at 59:4-9), and undated comments referring to adult African-American men as "boy", *id.* at 59:21-25.
- Use of the word "brother" in undated incidents (Rec. Doc. 123-4 at 45-46; Rec. Doc. 123-5 at 49:8-18).
- Testimony by David Dartez that Plaintiff told Dartez about derogatory race-related comments made in the 1970's and 1980's (Rec. Doc. 123-3 at 36:4-20).
- Purported denial of promotion opportunities prior to May 2, 2006, when Plaintiff was already on leave and never returned to his job.  (Rec. Doc. 92 at 27).

17

other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). The same *McDonnell* burden-shifting framework applies. *Id.*

In the time period relevant to the Title VII race discrimination claim, Plaintiff is left with his evidence of one instance in which his supervisor allegedly told him to "get your black ass out of my office"; alleged job scrutiny, work criticism, and threats (but not imposition) of disciplinary action; and his placement on disability leave and eventual medical retirement.

First, the alleged enhanced job scrutiny and work criticism do not constitute adverse employment actions. *See McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). Adverse employment actions, for the purposes of a Title VII discrimination claim, "include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Id.* Placement on paid leave is not an adverse employment action, *id.*, nor is unfavorable feedback or performance reviews without an additional showing of loss to Plaintiff's compensation, duties, or benefits, *see Watkins v. Paulsen*, 332 F. App'x 958, 960 (5th Cir. 2009); *accord Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (holding that criticism, oral threats, and abusive remarks are not adverse employment actions). These facts, taken as true on summary judgment, are not actionable adverse employment actions under Title VII.

Second, the only alleged racially-motivated comment that occurred during the relevant Title VII period is an alleged comment by Plaintiff's supervisor that Plaintiff should "get your black ass out of my office." (Butler Dep. Vol. II, 82:1-19). Plaintiff does not tie this isolated comment to any adverse employment action taken against him, and indeed did not report the comment to Human Resources. (D's Statement at ¶ 48; P's Statement at ¶ 48). This single

18

incident, taken as true, does not suffice to show the element of an adverse employment action necessary to prove his prima facie case on this claim, or that any other actions were motivated by race.

Third, Plaintiff relies on his entry on disability leave and eventual medical retirement. With respect to his entry on disability leave, the undisputed record evidence establishes that Plaintiff's treating physician recommended on July 19, 2005 that Plaintiff was unable to work (Mayfield Dep. at 277:11-278:22) and that Plaintiff was immediately placed on paid disability leave. Even if this constituted prima facie evidence of an adverse employment action, Defendant easily provides a legitimate non-discriminatory reason for placing him upon leave: the letter from Plaintiff's own doctor. The burden shifts back to Plaintiff, and Plaintiff has not provided evidence that his placement on short-term disability leave was pretextual rather than a genuine reaction to the request from Plaintiff's doctor. Accordingly, summary judgment is granted as to the Title VII discrimination claim to the extent that it is premised on Plaintiff's July, 2005 placement on disability leave.

With respect to his retirement, Plaintiff argues that his medical retirement in July 2006 was an involuntary, racially-motivated adverse employment action. However, as noted above, Plaintiff sought and received Social Security Disability Insurance (SSDI) Benefits dating to July 21, 2005, shortly after he entered on short-term disability leave from Defendant, on the basis that "his many medical conditions prevented him from working in any employment setting under the Social Security Law since July 2005." (Rec. Doc. 129 at 12-13). Accepting SSDI benefits based on an inability to work is not necessarily incompatible with being simultaneously qualified for one's old position. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802-03 (1999)

(holding that claimant's simultaneous receipt of SSDI Benefits and claim that he was qualified under the ADA "do not inherently conflict to the point where courts should apply a special negative presumption"); *see also McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 463 (5th Cir. 2005). But a "plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim" and "must proffer a sufficient explanation." *Cleveland*, 526 U.S. at 806. "To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job...." *Id.* at 807 (qualification under ADA claim); *see also McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 463 (5th Cir. 2005) (extending "persuasive" *Cleveland* reasoning to ADEA claim which also had qualification for position as element of prima facie case)

In pursuing his SSDI benefits, counsel for Plaintiff represented that he "has been *unable to work since July 21, 2005* due to his severe impairments." (Hagen Dec., Exh. B at SSA44) (emphasis added). An ALJ agreed and issued findings of fact and conclusion of law that Plaintiff "is unable to perform any past relevant work" and that Plaintiff "has been under a disability, as defined in the Social Security Act, from July 21, 2005 through the date of this decision [April 24, 2008]." (*Id.* at SSA 54, 55). Defendant flagged this inconsistency in its motion for summary judgment; in response, Plaintiff merely points out the "differences in the requirements of the two statutes" and the fact that there was a delay between the alleged failure to accommodate and the time he actually received the SSDI Benefits in 2009. (Opp. at 21 n.93). This does not sufficiently explain how Plaintiff was qualified to return to his job *after* July 21,

20

2005, or how his "forced" retirement in 2006 could have been an adverse employment action motivated by race. Accordingly, on these undisputed facts Plaintiff's pursuit and acceptance of SSDI Benefits estops him from contending that he was qualified to return to his job after July 21, 2005. This is fatal to his prima facie case for Title VII discrimination premised on the 2006 retirement.

For the foregoing reasons, summary judgment is granted with respect to Plaintiff's Title VII discrimination claim.

### 2) Title VII Harassment/Hostile Work Environment

A race-based harassment/hostile-work environment claim requires that Plaintiff establish a prima facie case that (1) he is a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment affected a term or condition of his employment; and (4) Defendant knew or should have known about the harassment and failed to take prompt remedial action. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007). The Court looks to the totality of the circumstances, considering "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating[;] and whether it unreasonably interferes with an employee's work performance." *Id.* (quotation and alteration omitted). Generally, poor performance evaluations, "write-ups," and work criticism, even if unjust and unfair and in front of peers, do not rise to the level of a hostile work environment. *See Kang v. Bd. of Supervisors*, 75 F. App'x 974, 975-76, 977 (5th Cir. 2003). Likewise, "[m]ere utterance of an ... epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Case 3:07-cv-00386-EEF-JW   Document 155   01/20/12   Page 21 of 29

As set forth above, Plaintiff has produced evidence that, taken in his favor on summary judgment, establishes workplace criticism and job scrutiny, as well as one instance in which his supervisor told him in racially-charged terms to get out of the supervisor's office.[8]  Plaintiff has submitted no evidence beyond his bare self-serving speculation that the workplace criticism was racially motivated or contained racial overtones.  Collectively, this evidence does not suffice to raise a triable issue of fact on a Title VII hostile work environment claim.  Though the supervisor's comment was undoubtedly inappropriate, the totality of the record does not establish actionable conduct "severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive."  *Harris*, 510 U.S. at 21.  Summary judgment is granted as to this claim as well.

Finally, summary judgment is also warranted on Plaintiff's claim that his placement on disability leave and medical retirement were in fact a constructive discharge.  A Title VII constructive discharge claim "requires a greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment."  *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011).  Plaintiff's hostile work environment claim does not survive summary judgment, and *a fortiori* his constructive discharge claim falls with it.

### 3)  § 1981 Discrimination & Hostile Work Environment

The elements of a Title VII and § 1981 claim are the same and are subject to the same analysis.  *Pratt v. City of Houston*, 247 F.3d 601, 606 n.1 (5th Cir. 2001).  However, the § 1981

_____

[8]Plaintiff also cites instances in which co-workers addressed him with the terms "you" or "y'all."  "Although in some contexts the use of racial epithets or ethnic slurs may support an inference of race discrimination, no reasonable person could attribute racial animus to the use of the race-neutral, colloquialism 'Y'all.'" *Montgomery v. Coca-Cola Enters., Inc.*, 2003 WL 138087, at *6 (N.D. Tex. Jan. 14, 2003).

Case 3:07-cv-00386-EEF-JW   Document 155   01/20/12   Page 22 of 29

encompasses a slightly larger temporal reach. (Rec. Doc. 92). Accordingly, the Court's analysis is the same as above, with the addition of two possible additional circumstances of allegedly discriminatory conduct: Plaintiff's transfer in 2004 from the "Chemical Plant" to the "Refinery" with the SPM Group, and an alleged racially-charged comment by another employee who was not Plaintiff's supervisor.

With respect to the 2004 transfer, Defendant does not argue in his opposition that his transfer in 2004 from the "Chemical Plant" to the "Refinery" was discriminatory, rather than a facility-wide company consolidation motivated by efficiency and applicable to multiple workgroups and personnel.

One additional alleged racial comment in 2004 by Rodney Nijoka, is encompassed in the applicable Section 1981 period. The undisputed summary judgment record establishes that Mr. Nijoka would place orders for materials through Plaintiff, and that he was not Plaintiff's supervisor. Plaintiff stated at his deposition that after receiving criticism from Mr. Nijoka he complained to the human resources department regarding Mr. Nijoka "yelling and cursing at him," after which Mr. Nijoka told Plaintiff "I'm going to get you, you black bastard." (P's Dep. Vol. I, 335-338).

This additional incident, taken as true for the purposes of this motion, does not defeat summary judgment. With respect to a discrimination claim, at most it represents criticism by a non-supervisor, which does not constitute an adverse employment action and is not tied to any other adverse action. With respect to a harassment or hostile work environment claim, this single additional incident, even compounded with the allegations falling within the Title VII time period, and even "illuminated" by Plaintiff's stale allegations of prior racially-charged language,

Case 3:07-cv-00386-EEF-JW   Document 155   01/20/12   Page 23 of 29

as a matter of law does not arise to the level of conduct "severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive." *Harris*, 510 U.S. at 21. Summary judgment is granted as to Plaintiff's claims for discrimination or harassment under 28 U.S.C. § 1981. Moreover, the constructive discharge claim fails for the same reason as the Title VII constructive discharge claim.

## F.     Retaliation Claims

Defendant moves for summary judgment on race-, disability-, and age-based retaliation claims. In response, Plaintiff argues that summary judgment is not warranted on claims for race-based retaliation under Title VII or disability-based retaliation under the ADA, although he does not clearly differentiate between the two claims.[9]

The elements of a Title VII and ADA retaliation claim are essentially the same but protect different activity. "To show an unlawful retaliation, a plaintiff must establish a prima facie case of (1) engagement in an activity protected by the ADA [or Title VII], (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999); *accord Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 130 (5th Cir. 2011) (describing similar elements of Title VII retaliation claim). To pursue a retaliation claim, Plaintiff need not actually be disabled or a member of a protected class, but rather must have a good faith belief that the ADA or Title VII have been violated. *Tabatchnik v. Continental Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008).

---

[9]In his summary judgment opposition, Plaintiff does not argue for a retaliation claim under the ADEA. He also does not articulate a retaliation claim under § 1981, which was a subject of Defendant's motion for summary judgment. (Rec. Doc. 129 at 26-27). Accordingly, the motion for summary judgment is unopposed as to the ADEA retaliation claim.

Case 3:07-cv-00386-EEF-JW   Document 155   01/20/12   Page 24 of 29

If Plaintiff establishes the prima facie case, Defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If that reason is provided, Plaintiff must produce evidence that the proffered reason is a pretext and that but for his protected activity, the adverse employment action would not have occurred. *Id.*

      **1)**    **Prima Facie Case**

Plaintiff can satisfy his burden on the "protected activity" prong of his prima facie case by showing that he "(1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996) (quotations omitted); *accord Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999) (applying same elements but protecting engagement in activity protected by the ADA). Plaintiff provides competent summary judgment evidence that he made requests for disability "accommodations" including movement to a different facility with less exposure to irritants. Although as the Court has explained above Plaintiff was not in fact disabled within the meaning of the ADA, it is sufficient if Plaintiff had a reasonable belief that he was covered by the ADA. *See E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 n.9 (5th Cir. 2009) ("Every appeals court to consider this issue has concluded that [requesting an accommodation] is protected as long as the employee had the reasonable belief that he was covered by the ADA."). Additionally, Plaintiff states that he complained to Defendant that his workplace scrutiny was racially motivated, and also filed a discrimination complaint in November 2005, after he had been placed on short-term disability leave but before he retired. Taking this evidence in the most favorable light to Plaintiff, it demonstrates conduct

Case 3:07-cv-00386-EEF-JW   Document 155   01/20/12   Page 25 of 29

protected by the ADA and by Title VII, respectively, which satisfies the first element of his prima facie cases for disability or race-based retaliation.

The next element of Plaintiff's prima facie case is that he suffered an adverse employment action. A retaliation claim under Title VII and the ADA, "unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).[10] It is sufficient for the prima facie case if the discriminatory adverse employment action "is one that a reasonable employee would have found to be materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Aryain*, 534 F.3d at 484.

On the one hand, chastisement by superiors and ostracism by co-workers "do not rise to the level of material adversity but instead fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that the Supreme Court has recognized are not actionable retaliatory conduct." *Stewart*, 586 F.3d at 332. Thus, as a matter of law, Plaintiff's allegations of workplace criticism and job scrutiny are not adverse employment actions for the purposes of his retaliation claims.

On the other hand, paid administrative leave may constitute a retaliatory adverse employment action, dependent on the particular circumstances and context. *See Stewart*, 586 F.3d at 332. Plaintiff's placement on short-term medical disability leave and eventual medical retirement may suffice to establish this element of the prima facie case. For the purposes of this

---

[10] Though *Burlington* was a Title VII case, *Burlington* applies equally to ADA retaliation cases. *See Grubic v. City of Waco*, 262 F. App'x 665, 666 n.6 (5th Cir. 2008).

Case 3:07-cv-00386-EEF-JW   Document 155   01/20/12   Page 26 of 29

summary judgment motion, Court will assume that they constitute adverse employment actions.

The third element of Plaintiff's prima facie case is causation. To establish a prima facie case and defeat summary judgment, Plaintiff "must demonstrate a conflict in substantial evidence on the ultimate issue of 'but for' causation." *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 130 (5th Cir. 2011) (quotation and some alterations omitted). "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* (quotation omitted). "Temporal proximity, standing alone, is not enough." *Id.* On the other hand, under some circumstances "[w]here there is close timing between an employee's protected activity and an adverse employment action, the employer must offer a legitimate nondiscriminatory reason that explains both the adverse action and the timing." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999).

Here, Plaintiff argues that causation of either race-based or disability-based retaliation can be inferred from the fact that his work criticism was unwarranted, from comments by his supervisor that he was "faking" his impairments, and from the temporal proximity between some of Plaintiff's complaints of harassment and his entry on disability leave and eventual medical retirement. None of these are particularly probative of an actual *causal link* between the Plaintiff's disability leave and medical retirement on the one hand, and his requests for accommodations or complaints of racial discrimination. Taking the evidence in Plaintiff's favor, both sets of events happened, but Plaintiff has not tied them together. He has not produced any evidence regarding who at the MOHD made decisions regarding his disability leave and medical retirement, or how that decisionmaker was motivated, or the extent to which either race or

27

disability was the motive. Moreover, although Plaintiff's disability leave in July 2005 did follow some of Plaintiff's complaints, it more directly followed the letter from Plaintiff's treating physician; thus, any inference from temporal proximity is greatly attenuated.

Assuming for the sake of argument that Plaintiff has produced sufficient evidence to infer a causal link between the actionable adverse employment actions and his Title VII/ADA-protected conduct, Plaintiff fails to raise a genuine issue of material fact that Defendant's actions were pretextual. As explained above, Defendant placed Plaintiff on paid administrative leave on the basis of a letter from his treating physician declaring him unfit for work. Defendant assisted Plaintiff in obtaining a medical retirement, well after he was already completely unfit for work, as he represented to the Social Security Administration. These are plausible non-pretextual reasons for Defendant's conduct. In response, Plaintiff offers nothing more than his mere personal speculation that any of these actions were retaliatory and motivated by his complaints of racial discrimination or requests for accommodations. There is simply no triable issue of fact for the jury on Plaintiff's retaliation claims, and summary judgment is granted as to those claims as well.

## G.    State-Law Claims

Plaintiff also apparently pursues his discrimination claims under the Louisiana Employment Discrimination Law. However, Plaintiff has not articulated how the analysis under the LEDL differs in any way from his federal claims. Accordingly, summary judgment is granted as to Plaintiff's state-law claims.

## IV.    Conclusion

Accordingly, for the foregoing reasons,

Case 3:07-cv-00386-EEF-JW   Document 155   01/20/12   Page 28 of 29

IT IS ORDERED that the Defendant's motion for summary judgment (Rec. Doc. 118) is GRANTED and all of Plaintiff's claims are dismissed WITH PREJUDICE.

New Orleans, Louisiana, this 20th day of January, 2012.

_____
UNITED STATES DISTRICT JUDGE

Case 3:07-cv-00386-EEF-JW   Document 155   01/20/12   Page 29 of 29